**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **RACHEL LEANN SCHULTZ,** | |
| Plaintiff, | Case No. 3:16-cv-00757-JR |
| v. | **FINDINGS AND RECOMMENDATION** |
| **NANCY A. BERRYHILL**, Acting Commissioner of Social Security, | |
| Defendant. | |

**Russo, Magistrate Judge**:

Rachel Schultz ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Because the Commissioner's decision is not supported by substantial evidence, the decision should be REVERSED and REMANDED for immediate payment of benefits.

## I. BACKGROUND

### A. The Application

Born in July 1975, plaintiff was 39 years old at the time of the administrative hearing. Tr. 242. She completed two years of college and has past work experience as a frame designer, picture framer, sales associate, jewelry designer, and exotic dancer. Tr. 247-48. She alleges disability as of June 1, 1991 due to borderline personality disorder and depression. Tr. 242, 247.

Plaintiff filed her application on May 9, 2012. Tr. 216. After the Commissioner denied her application initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 113-17, 129-31. An administrative hearing was held on July 8, 2014 before ALJ Kelly Wilson, and plaintiff amended her alleged onset date to May 9, 2012. Tr. 60-93. ALJ Wilson held a second hearing on September 30, 2014 to take testimony from a non-examining medical expert after new evidence was added to the record. Tr. 37-59. On December 24, 2014, the ALJ issued a written decision finding plaintiff not disabled. Tr. 16-36. The Appeals Council denied plaintiff's subsequent request for review on March 9, 2016, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-4. This appeal followed.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 724 (9th Cir. 2011); see also 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20

C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is

not disabled. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

Id. See also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. Id. at 953; see also Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); Yuckert, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. Tackett, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy "taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id.; see also 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. Bustamante, 262 F.3d at 953-54; Tackett, 180 F.3d at 1099.

**C.     The ALJ's Decision**

The ALJ performed the sequential analysis. At step one, she found plaintiff had engaged in substantial gainful activity between June 2013 and March 2014 because she worked as an exotic dancer. Tr. 18. The ALJ nevertheless concluded there was a continuous 12-month period during which plaintiff did not engage in substantial gainful activity, and proceeded to step two. Tr. 18-19. At step two, the ALJ concluded plaintiff had the following severe impairments: bipolar disorder, post-traumatic stress disorder, borderline personality disorder, and alcohol abuse/dependence in sustained remission. Tr. 19. At step three, the ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 20.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that she retains the capacity to perform a full range of work with the following limitations: she can perform work that does not require public contact; she can perform simple tasks but not detailed or complicated tasks; and she can work in proximity to others but would do best in more solitary work tasks. Tr. 22.

At step four, the ALJ found plaintiff is not able to perform her past relevant work. Tr. 29. The ALJ therefore proceeded to step five and found that plaintiff retains the ability to perform work that exists in significant numbers in the national economy, including pressure washer, grounds caretaker, and nursery worker. Tr. 29-30. The ALJ therefore concluded plaintiff was not disabled. Tr. 30.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." Bray v. Comm'r, 554 F.3d 1219, 1222 (9th Cir. 2009). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. See Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. Id.; see also Bray, 554 F.3d at 1226.

## II. DISCUSSION

Plaintiff argues the Commissioner erred by improperly evaluating the medical opinion evidence.

### A. Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

#### 1. Alex Jenkins, M.D.

Plaintiff argues that the ALJ improperly rejected the opinion of treating physician Alex Jenkins, M.D. The medical director of Providence Adult Outpatient Services, Dr. Jenkins observed plaintiff for over a month while she was enrolled in an out-patient program. He opined that while plaintiff was working hard in treatment to manage her symptoms and recover from her illnesses, she could not be a full-time parent and could not sustain full-time employment due to

her severe mental illness. Tr. 758. Dr. Jenkins also noted plaintiff's history of multiple hospitalizations, persistent severe mood swings, and intrusive hallucinations despite intensive treatment. Id.

The ALJ rejected Dr. Jenkins's opinion. Tr. 28. As an initial matter, Dr. Jenkins's opinion conflicted with the opinions of the state agency physicians, who reviewed the medical record and found that plaintiff was not disabled. Tr. 95-102, 103-11. The ALJ gave these opinions "significant weight." Tr. 25. The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Jenkins's controverted opinion. Bayliss, 427 F.3d at 1216.

First, the ALJ found that Dr. Jenkins's opinion was inconsistent with the record as a whole. Tr. 28. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions, and may reject a physician's opinion that conflicts with the record as a whole. Carmickle 533 F.3d at 1164. Here, however, numerous other treatment providers either concurred with Dr. Jenkins's findings or arrived at the same conclusion based on their own observations. For example, despite a rigorous treatment plan that involved a very high dose of sedating anti-psychotic drugs, plaintiff's treatment provider at Old Town Clinic noted that plaintiff's mental state remained unstable. Tr. 683, 690, 703. Examining psychologist Karla Causeya, Psy.D., performed extensive testing and concluded that plaintiff would not be able to sustain full-time work because of her ongoing anxiety and an inability to be socially appropriate on a consistent basis. Tr. 658-68. The Agency's medical expert testified that plaintiff's depression was not under control despite "very intensive treatment." Tr. 51. Examining physician Katherine Immerman, M.D., also concluded that plaintiff was not able to sustain full-time work because of the severity and recurrent nature of her mental illness and need for frequent psychiatric follow up and support. Tr. 733.

Dr. Jenkins's opinion was thus consistent with the treatment record. The only medical experts who disagreed with his conclusions were the non-examining Agency physicians and Jane Starbird, Ph.D., who examined plaintiff one-time in 2012 and did not have the opportunity to review the entire medical record. Tr. 318-23. As plaintiff's treating physician, Dr. Jenkins's opinion was entitled to great weight, and on this record the ALJ was not entitled to reject it in favor of the results of Dr. Starbird's one-time examination or the opinions' of the non-examining physicians. See Lester, 81 F.3d at 830 (The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians).

The Commissioner argues that Dr. Jenkins's opinion was contradicted by evidence of plaintiff's activities, such as working periodically as an exotic dancer. The ALJ may reject a medical opinion that is inconsistent with the claimant's work activity. Valentine v. Comm'r, 574 F.3d 685, 692-93 (9th Cir. 2009); see also Morgan v. Comm'r, 169 F.3d 595, 601-02 (9th Cir. 1999) (an ALJ may assign less weight to a doctor's opinion when it is inconsistent with the claimant's activities). Here, however, the ALJ does not explain how plaintiff's prior work activity contradicts any portion of Dr. Jenkins's opinion, specifically that plaintiff suffers from severe mental instability and other recurrent, intrusive mental symptoms. Tr. 28. The ALJ therefore failed to show how inconsistency with the record as a whole constitutes a specific and legitimate reason for rejecting Dr. Jenkins's opinion.

Second, the ALJ found Dr. Jenkins's opinion was largely based on plaintiff's subjective reports, which the ALJ found to be not credible. Tr. 28. An ALJ may reject a physician's opinion that is based primarily on a claimant's subjective statements if the ALJ properly found those statements not credible. Morgan, 169 F.3d at 602. Here, the ALJ rejected plaintiff's testimony as not credible, and plaintiff does not contest this finding. Tr. 25-29. As noted above, however, Dr.

Jenkins had a significant treatment relationship with plaintiff and spent over a month observing her in the day program in his medical facility. Tr. 758. Numerous and detailed treatment notes, such as observations of motor slowing and restricted affect, provide objective support for his findings. Tr. 750-56. Thus, while Dr. Jenkins recorded plaintiff's subjective statements in his treatment notes, his opinion was supported by his clinical observations. On this record, it was not reasonable to infer that Dr. Jenkins relied primarily on plaintiff's subjective reports in arriving at his medical opinion. The ALJ failed to provide legally sufficient reasons for rejecting the opinion of treating physician Dr. Jenkins.

### 2. Karla Causeya, Psy.D.

Dr. Causeya reviewed plaintiff's treatment records and administered psychological testing. Tr. 659. She found that plaintiff would not be able to sustain full-time work because of her ongoing anxiety and inability to be socially appropriate on a consistent basis. Id. Dr. Causeya explained that plaintiff's functioning is disrupted on a regular basis by depression, mania, and the effects of medication adjustments. Tr. 666-67. While Dr. Causeya noted that plaintiff "may have exaggerated some of her responses" to testing, she concluded that "it is likely that [plaintiff's] exaggerated responses are a reflection of how she really feels." Tr. 665.

The ALJ gave only some weight to Dr. Causeya's functional assessment. Tr. 27. Because Dr. Causeya's opinion conflicted with the opinions of the state agency physicians, the ALJ was required to provide specific, legitimate reasons for rejecting it. Bayliss, 427 F.3d at 1216.

The ALJ found that Dr. Causeya's opinion was based on plaintiff's subjective reports and conflicted with the record as a whole. Tr. 27. The ALJ may assign less weight to a doctor's opinion when it is inconsistent with the claimant's activities, and may reject an opinion that is based primarily on a claimant's discredited subjective statements. Morgan, 169 F.3d at 601-02.

As discussed above, however, there is ample support in the record for the finding that plaintiff suffers from highly unstable moods and other debilitating mental symptoms. Further, plaintiff's brief work history does not contradict Dr. Causeya's assessment of disruptive mental symptoms. On the contrary, it shows that plaintiff was unable to sustain substantial gainful employment due to persistent and disruptive symptoms of mental illness. Tr. 70-71, 319 (treatment note from Dr. Starbird stating that plaintiff was fired from numerous jobs due to social conflicts). On this record, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Causeya's opinion. Morgan, 169 F.3d at 601-02.

### 3. Katherine Immerman, M.D.

Dr. Immerman evaluated plaintiff on September 17, 2014 at the request of her treating therapist. Tr. 730-33. Dr. Immerman concluded that plaintiff was not able to sustain full-time work because of the severity and recurrent nature of her mental illness and need for frequent psychiatric follow up and support. Tr. 733. She also opined that plaintiff's condition had not been stabilized during their treatment relationship. Id.

The ALJ gave little weight to Dr. Immerman's opinion and was required to provide specific, legitimate reasons for doing so. Bayliss, 427 F.3d at 1216. First, the ALJ found that Dr. Immerman relied on plaintiff's statements in forming her opinion. Tr. 28. Here, however, Dr. Immerman's treatment notes reveal clinical observations of plaintiff's behavior and affect. Tr. 732. Dr. Immerman also reviewed the objective medical evidence including the results of Dr. Causeya's objective testing. Id. The record indicates that Dr. Immerman did not base her opinion entirely on plaintiff's subjective statements, but rather considered those statements in concert with objective evidence.

Second, the ALJ rejected Dr. Immerman's opinion because in 2012 plaintiff's symptoms were noted to improve with medication. Tr. 28. It is clear from the record, however, that plaintiff's mental symptoms have not stabilized on medication. In addition to the opinions of the treating and examining physicians discussed above, the Agency's testifying medical expert opined in September 2014 that plaintiff's depression was not under control despite "very intensive treatment." Tr. 51. On this record, plaintiff's brief improvement with medication was not a legally sufficient reason to reject Dr. Immerman's opinion.

Third, the ALJ found that Dr. Causeya's opinion was contradicted by the fact that plaintiff worked as an exotic dancer until March 2014. Tr. 28. The ALJ may reject a medical opinion that is inconsistent with the claimant's work activity. Valentine, 574 F.3d at 692-93. As discussed above, however, plaintiff's work history was sporadic and fraught with outbreaks of mental illness. Tr. 70-71, 319. Further, there is no evidence that plaintiff was able to sustain full-time employment for more than a few months after her alleged onset date. Tr. 23, 319. On this record, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Immerman's opinion.

**4. Susan Marie, PMHNP, Ph.D.**

Dr. Marie was plaintiff's mental health treatment provider beginning in 2012, and saw plaintiff monthly beginning in May 2013. Tr. 624-38. Dr. Marie opined that plaintiff was significantly psychologically unstable and therefore unable to maintain employment. Id. She found that plaintiff becomes aggressive when manic, rages and yells unpredictably, and has mood swings that affect her attention and concentration. Tr. 636.

The ALJ rejected Dr. Marie's opinion that plaintiff was unable to work because it was based on plaintiff's subjective statements and inconsistent with the record as a whole. Tr. 27. The court rejects this reasoning for the reasons discussed at length above. Specifically, Dr. Marie's

Page 11 – FINDINGS AND RECOMMENDATION

notes contain ample observations of plaintiff's mental symptoms and limitations, and her conclusions are consistent with the weight of the medical record. Tr. 624-38.

In addition, the ALJ found that Dr. Marie's opinion was contradicted by evidence that plaintiff's symptoms "were largely stable on medication." Tr. 27. Conditions that can be controlled with medication are not disabling for the purposes of determining eligibility for benefits. Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, however, the record shows that plaintiff was not stabilized on medication for any significant length of time. For example, plaintiff's mood was not stabilized in 2013 despite treatment with Risperidone for psychosis. Tr. 703. Plaintiff remained tearful and depressed throughout 2014 despite treatment with Depakote and Lithium. Tr. 683, 690. It is error for the ALJ "to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). The ALJ's rejection of Dr. Marie's opinion was error.

In sum, the ALJ's evaluation of the medical evidence was not supported by legally sufficient reasons and should be reversed.

**B.    Remand**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir 2004)). The

court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. Id. at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Id. The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court with flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett v. Barnhart, 340 F.3d 871 876 (9th Cir. 2003) (citing Bunnell v. Sullivan, 947 F.2d 341, 348 (9th Cir. 1991) (en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Dr. Jenkins, Dr. Causeya, Dr. Immerman, and Dr. Marie. When the erroneously rejected evidence is credited as true, no outstanding issues remain before a disability determination can be made. Dr. Jenkins opined that plaintiff's severe limitations would prevent her from sustaining substantial gainful employment. Tr. 758. On this record, it is clear that the ALJ would be required to find plaintiff disabled when the erroneously rejected evidence is credited, and therefore, remand for immediate payment of benefits is appropriate.

## II. RECOMMENDATION

The Commissioner's decision is not supported by substantial evidence in the record and should therefore be REVERSED and REMANDED for the immediate payment of benefits.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 21 day of April 2017.

      s/Jolie A. Russo  
      JOLIE A. RUSSO  
      United States Magistrate Judge